No. 2025-_____
[Fed. Cl. No. 23-cv-1797]

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

_____

LIGADO NETWORKS LLC,

Plaintiff-Respondent,

v.

THE UNITED STATES,

Defendant-Petitioner.

_____

PETITION FOR PERMISSION TO APPEAL AN INTERLOCUTORY
ORDER OF THE COURT OF FEDERAL CLAIMS DATED NOVEMBER
18, 2024, IN CASE NO. 23-CV-1797, PURSUANT TO 28 U.S.C. § 1292(d)

_____

YAAKOV M. ROTH
*Acting Assistant Attorney General*

PATRICIA M. McCARTHY
*Director*

NATHANAEL B. YALE
BORISLAV KUSHNIR
*Attorneys, Commercial Litigation Branch*
*Civil Division, U.S. Department of Justice*
*P.O. Box 480, Ben Franklin Station*
*Washington, DC 20044*
*(202) 616-0464*

March 10, 2025

# TABLE OF CONTENTS

STATEMENT OF CONTROLLING QUESTIONS OF LAW ............................. 1

STATEMENT OF THE CASE ................................................................................ 2

    I.      Background ................................................................................................. 2

    II.    Present Litigation .................................................................................... 3

REASONS FOR GRANTING THE PETITION ....................................................... 6

    I.      The November 18, 2024, Order Involves Controlling Questions Of Law ................................................................................................................ 7

    II.    There Are Substantial Grounds For Difference Of Opinion On These Controlling Questions Of Law ....................................................... 9

    III.   Immediate Appeal Will Materially Advance The Termination Of This Litigation .................................................................................................. 21

CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                               **Page(s)**

*Acceptance Ins. Cos. Inc. v. United States,*
503 F.3d 1328 (Fed. Cir. 2007) ....................................................................10

*Alley's of Kingsport, Inc. v. United States,*
106 Fed. Cl. 762 (2012) ..............................................................................22

*Alpine PCS, Inc. v. United States,*
878 F.3d 1086 (Fed. Cir. 2018), *cert. denied*, 586 U.S. 817 (2018) ....................10, 11, 12

*Am. Bankers Ass'n v. United States,*
932 F.3d 1375 (Fed. Cir. 2019) ....................................................................15

*Am. Pelagic Fishing Co., L.P. v. United States,*
379 F.3d 1363 (Fed. Cir. 2004) ....................................................................11

*Cedar Point Nursery v. Hassid,*
141 S. Ct. 2063 (2021) ................................................................................15

*Coast Fed. Bank, FSB v. United States,*
49 Fed. Cl. 11 (2001) ............................................................................7, 9, 21

*Connolly v. Pension Benefit Guaranty Corp.,*
475 U.S. 211 (1986) ..................................................................................20

*Conti v. United States,*
291 F.3d 1334 (Fed. Cir. 2002) ....................................................................14

*Darby Development Co., Inc. v. United States,*
112 F.4th 1017 (2024) ............................................................................18, 19

*Del-Rio Drilling Programs, Inc. v. United States,*
146 F.3d 1358 (Fed. Cir. 1998) ...............................................................5, 17, 18

*Doe No. 1 v. United States,*
163 Fed. Cl. 608 (2023) ................................................................................7

ii

*Fairholme Funds, Inc. v. United States*,
    147 Fed. Cl. 126 (2020) ................................................................. 7, 8

*FCC v. Sanders Bros. Radio Station*,
    309 U.S. 470 (1940) ......................................................................14

*Fishermen's Finest, Inc. v. United States*,
    59 F.4th 1269 (Fed. Cir. 2023) ...........................................7, 11, 14

*Hearts Bluff Game Ranch, Inc. v. United States*,
    669 F.3d 1326 (Fed. Cir. 2012) .....................................................15

*Hooe v. United States*,
    218 U.S. 322 (1910) ......................................................................16

*In re NextWave Personal Comms.*,
    200 F.3d 43 (2d Cir. 1999) ...........................................................14

*Laturner v. United States*,
    135 Fed. Cl. 501 (2017) ............................................................ 9, 22

*Lion Raisins, Inc. v. United States*,
    416 F.3d 1356 (Fed. Cir. 2005) .....................................................18

*Members of Peanut Quota Holders Ass'n, Inc. v. United States*,
    421 F.3d 1323 (Fed. Cir. 2005) .....................................................13

*Mitchell Arms, Inc. v. United States*,
    7 F.3d 212 (Fed. Cir. 1993) ..........................................................15

*Mitchell v. United States*,
    267 U.S. 341 (1925) ......................................................................16

*Mobile Relay Associates v. FCC*,
    457 F.3d 1 (D.C. Cir. 2006) .................................................4, 12, 13

*Mohawk Ind., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ........................................................................9

*Neb. Pub. Power Dist. v. United States*,
    74 Fed. Cl. 762 (2006) ............................................................... 7, 9

*Northrop Corp., Northrop Elecs. Sys. Div. v. United States,*
    27 Fed. Cl. 795 (1993) ....................................................................................21

*Reid v. United States,*
    149 Fed. Cl. 328 (2020) ................................................................................21

*Rith Energy, Inc. v. United States,*
    247 F.3d 1355 (Fed. Cir. 2001) .............................................................. 18, 19

*Rith Energy, Inc. v. United States,*
    270 F.3d 1347 (Fed. Cir. 2001) .............................................................. 16, 18

*Ruckelshaus v. Monsanto,*
    467 U.S. 986 (1984) ......................................................................................20

*Sandwich Isles Commc'ns, Inc. v. United States,*
    992 F.3d 1355 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2647 (2022) ...............7, 10, 12

*Taylor v. United States,*
    959 F.3d 1081 (Fed. Cir. 2020) ....................................................................16

*Tidewater Oil Co. v. United States,*
    409 U.S. 151 (1972) ........................................................................................6

*United States v. Bormes,*
    568 U.S. 6 (2012) ..........................................................................................10

*United States v. Fuller,*
    409 U.S. 488 (1973) ......................................................................................14


**Statutes**

28 U.S.C. § 1292(d) ................................................................................*passim*

28 U.S.C. § 1491(a)(1) ............................................................................ 10, 19

47 U.S.C. § 151...............................................................................................2

47 U.S.C. § 301 .................................................................................*passim*

47 U.S.C. § 304 ...............................................................................14

47 U.S.C. § 305(a) .............................................................................3

47 U.S.C. § 310(d) ...........................................................................15

47 U.S.C. § 402(b) ...........................................................................13

47 U.S.C. § 902(b) .............................................................................3

**Rules**

Fed. R. App. P. 5 ...............................................................................1

 **Regulations**

47 C.F.R. § 1.3……………………………………………………...……11

47 C.F.R. § 25.117 ........................................................................... 11

**Other Authorities**

16 Charles Alan Wright & Arthur Miller,
  Federal Practice and Procedure § 3930 (3d ed. 2024) .................................... 8

*In the Matter of LightSquared Technical Working Group Report and LightSquared License
  Modification Application,*
  Order and Authorization, 35 FCC Rcd. 3772 (2020) .............................................*passim*

Pursuant to 28 U.S.C. § 1292(d)(2) and Rule 5 of the Federal Rules of Appellate Procedure, the United States respectfully petitions this Court for permission to appeal an interlocutory order of the Court of Federal Claims (trial court) entered on November 18, 2024. Appx1-13. On February 28, 2025, the trial court amended the order to reflect that this case satisfies the criteria for appeal pursuant to 28 U.S.C. § 1292(d)(2). Appx14.

## STATEMENT OF CONTROLLING QUESTIONS OF LAW

This Fifth Amendment takings case arises from a regulatory dispute. Plaintiff-Respondent, Ligado Networks LLC (Ligado), applied to the Federal Communications Commission (FCC or Commission) to modify its existing Mobile Satellite Services (MSS) license so that Ligado could operate a wireless terrestrial network within L-Band spectrum. On April 22, 2020, the FCC granted Ligado a modified license (the April 2020 Order)[1] subject to several conditions designed to address concerns raised by several Federal agencies, including the Department of Defense (DoD) and the National Telecommunications and Information Administration (NTIA), that Ligado's operation within L-Band spectrum could harmfully interfere with the Global Positioning Systems, or GPS, which operates in nearby spectrum bands.

On October 12, 2023, Ligado filed a complaint in the trial court seeking nearly $40 billion and alleging that the Government, acting primarily through DoD, NTIA,

---

[1] *In the Matter of LightSquared Technical Working Group Report and LightSquared License Modification Application*, Order and Authorization, 35 FCC Rcd. 3772 (2020).

and Congress, had effected a Fifth Amendment taking by unlawfully preventing Ligado from using the licensed spectrum. In a November 18, 2024, Opinion and Order, the trial court granted in part and denied in part the Government's motion to dismiss. The trial court dismissed Ligado's legislative takings claim but denied the Government's motion to dismiss with respect to Ligado's physical, *per se* (*i.e.*, categorical) regulatory, and regulatory takings claims. Appx1-13. On February 28, 2025, the trial court amended its order to reflect that this case satisfies the criteria for appeal pursuant to 28 U.S.C. § 1292(d)(2).

We seek permission to appeal four questions relating to the interlocutory order: (1) whether the trial court lacks jurisdiction to entertain Ligado's takings claims because the comprehensive remedial scheme of the Communications Act displaces Tucker Act jurisdiction; (2) whether an FCC license constitutes a cognizable property interest for takings purposes; (3) whether a plaintiff sufficiently pleads authorized Government action necessary for a takings claim when alleging that a taking occurred because the Government acted unlawfully; and (4) whether FCC-licensed spectrum can be the subject of a physical takings claim.

## STATEMENT OF THE CASE

### I.    Background

The Communications Act sets forth a comprehensive scheme authorizing the FCC to regulate the non-Federal Government use of spectrum. *See* 47 U.S.C. § 151 *et.*

*seq.* NTIA, located within the Department of Commerce (Commerce), manages the Federal Government's use of spectrum, such as for GPS. *See id.* §§ 151, 301, 305(a), 902(b)(2)(A).

For more than two decades, Ligado has held an FCC license authorizing it to provide satellite services in certain spectrum bands, located in what is referred to as the L-Band. *April 2020 Order*, 35 FCC Rcd. at 3773-74. Portions of this licensed spectrum border bands in which critical GPS services operate, including those operated by the Federal Government.

In December 2015, Ligado filed applications to modify its existing MSS license to conduct terrestrial operations in the L-Band. *Id.* at 3778-79. NTIA objected to Ligado's proposed license modifications because the proposed terrestrial network would harmfully interfere with GPS. *Id.* at 3780-83. Eventually, in its April 2020 Order, the FCC granted Ligado's amended license modification applications subject to certain restrictive conditions. *Id.* at 3835-41. On May 22, 2020, NTIA—on behalf of the Executive Branch—petitioned the FCC to reconsider and rescind its approval of Ligado's applications. Appx3. This reconsideration petition, as well as seven other reconsideration petitions, remain pending at the FCC. *Id.*

## II. Present Litigation

On October 12, 2023, Ligado filed its complaint alleging that the Government has engaged in an "unlawful scheme" to prevent Ligado from using its FCC-licensed

spectrum resulting in takings based upon four separate theories, including that DoD effected a physical taking by surreptitiously operating undisclosed programs within the licensed spectrum, and that DoD and NTIA have effected categorical and regulatory takings by prohibiting Ligado's use of the spectrum through various actions (*e.g.,* not abiding by the April 2020 Order, falsely and pretextually claiming to Congress, the FCC, and others that Ligado's license use would interfere with GPS). Dkt. No. 1 ¶¶ 1-6 (Compl.); Appx4-5; Appx7-8.

On November 18, 2024, the trial court issued its order dismissing Ligado's legislative takings claim but otherwise denying the motion to dismiss. The trial court first determined that it possessed jurisdiction to entertain Ligado's takings claims. It determined that although this Court has made clear that claims implicating the Communications Act displace Tucker Act jurisdiction, such precedent was inapplicable because Ligado "does not challenge the validity or propriety of the FCC order concerned." Appx7.

Next, the trial court held that Ligado alleged a cognizable property interest for takings purposes. Even though the cases it cited were resolved on jurisdictional grounds, the trial court relied heavily on the fact that prior decisions of this Court rejecting takings claims involving FCC licenses had not addressed whether FCC licenses were property for takings purposes. Appx8. And the trial court determined that the D.C. Circuit's decision in *Mobile Relay Associates v. FCC,* 457 F.3d 1, 12 (D.C.

4

Cir. 2006), which held that an FCC license was not property for takings purposes, was non-binding and could be distinguished because it involved "an action by the FCC in limiting a license." Appx8. Otherwise, the trial court conducted no structured analysis as to why an FCC license constitutes a property interest by, for example, examining the language of the Communications Act and the traditional hallmarks of private property as applied to FCC licenses. Instead, the trial court conflated the jurisdictional and property interest issues by addressing in its property interest analysis whether the FCC could "provide an adequate remedy for Ligado." Appx9.

With respect to our argument that Ligado failed to allege authorized Government action sufficient for takings purposes, the trial court cited *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998), and concluded, without further analysis, that the Government's actions were authorized because they fell within the scope of the agencies' duties. Appx10-11. This is despite the fact that the trial court also recognized that the substance of Ligado's takings theories rested on the notion that Government conduct had effected a taking *because* that conduct was inconsistent with the FCC's April 2020 Order and therefore unlawful. *See* Appx7 ("[Ligado] argues that various Government actors have not complied with the Order, preventing [Ligado] from using its license."); *id.* at Appx8 ("Ligado seeks damages

against the Government for allegedly not complying with the Order and taking

[Ligado's] licensed spectrum.").[2]

The Government then requested that the trial court certify its order under 28

U.S.C. § 1292(d)(2) for interlocutory appeal. The court granted that request on

February 28, 2025, and amended its order. Appx14.

## REASONS FOR GRANTING THE PETITION

This Court should exercise its discretion to review the order denying in part the

Government's motion to dismiss, which the Court of Federal Claims properly

certified under 28 U.S.C. § 1292(d)(2). *See* Appx1-14. Section 1292(d)(2) reflects the

view that "interlocutory appeals involving important and controlling questions of law

are a useful means of expediting litigation." *Tidewater Oil Co. v. United States*, 409 U.S.

151, 179 (1972). As the Court of Federal Claims concluded, the order involves

"controlling question[s] of law" as to which "there is substantial ground for difference

of opinion," and "an immediate appeal from the order may materially advance the

ultimate termination of the litigation." 28 U.S.C. § 1292(d)(2). As set forth below, the

standards for interlocutory appeal are easily met in this case with respect to each of

---

[2] The trial court's decision does not contain separate sections specifically addressing
the Government's arguments that Ligado failed to state physical, regulatory and
categorical takings claims.

the four issues we have identified; indeed, this case exemplifies the type of case to which Congress intended that section 1292(d)(2) apply.

## I.    The November 18, 2024, Order Involves Controlling Questions Of Law

The first factor for determining whether an interlocutory order is ripe for appeal is whether it involves a controlling question of law.  A question of law is "controlling" when resolving it would "materially affect issues remaining to be decided in the trial court." *Doe No. 1 v. United States*, 163 Fed. Cl. 608, 612 (2023) (quoting *Coast Fed. Bank, FSB v. United States*, 49 Fed. Cl. 11, 13 (2001)); *Fairholme Funds, Inc. v. United States*, 147 Fed. Cl. 126, 130 (2020); *Neb. Pub. Power Dist. v. United States*, 74 Fed. Cl. 762, 763 (2006).

The four questions that we seek to certify would each materially affect the resolution of the remaining issues in this case.  On the first question—whether the Communications Act's comprehensive remedial scheme displaces the trial court's Tucker Act jurisdiction to entertain Ligado's takings claims—the trial court plainly cannot entertain any claims if it lacks jurisdiction.  *See Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1361-65 (Fed. Cir. 2021) (affirming dismissal of takings claim where the Communications Act displaced the trial court's jurisdiction).  On the second question, if an FCC license cannot constitute a property interest cognizable under the Fifth Amendment's Takings Clause, then all of Ligado's claims would fail, and the case would end.  *See, e.g.*, *Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269,

1275-79 (Fed. Cir. 2023) (affirming dismissal of takings claim because of lack of property interest in Federal license). The same is true of the third question—whether Ligado has pleaded the required authorized Government action for takings purposes when its theory is that a taking exists because the Government action is unlawful. Likewise, if the Court rejects Ligado's novel legal theory that a spectrum license can be the subject of a physical taking, Ligado's physical takings claim would be dismissed, and the issues before the trial court would be materially affected. *See Fairholme*, 147 Fed. Cl. at 130 (finding controlling question where reversal on any number of discrete dismissed claims "would significantly alter any future litigation in the case").

Moreover, although an issue need not be recurring or necessarily affect other cases to be controlling, 16 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 3930 (3d ed. 2024) (explaining that such factors "are not supported by any statutory purpose"), the trial court's decision here implicates both considerations. This is the first time that any court has *ever*: (1) held that an FCC license can be property for takings purposes; (2) validated the theory of a physical taking of FCC-licensed spectrum; or (3) held that an FCC license holder can litigate the conditions of its license in the Court of Federal Claims rather than as prescribed in the Communications Act. Thus, although unnecessary for certification, these rulings on issues of first impression will likely soon affect other cases, further demonstrating how the trial court's order decided controlling questions of law.

## II.	There Are Substantial Grounds For Difference Of Opinion On These Controlling Questions Of Law

A "substantial ground for a difference of opinion" on a controlling question of law typically arises when the decision (1) is in tension with other decisions from other courts, or (2) involves a novel issue or one of first impression.  *Coast Fed. Bank, FSB v. United States*, 49 Fed. Cl. 11, 13 (2001); *see also Mohawk Ind., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009) (interlocutory appeal appropriate when issue is novel or one of first impression); *Laturner v. United States*, 135 Fed. Cl. 501, 504 (2017) (same).  A substantial ground for difference of opinion does not require a "full blown intracircuit or intercircuit conflict[]"; rather, a "healthy tension" among decisions is sufficient. *Neb. Pub. Power*, 74 Fed. Cl. at 764.

*First*, there is substantial ground for difference of opinion with the trial court's holding regarding the scope of the Communications Act's displacement of Tucker Act jurisdiction, as well as its conclusion that the Communications Act does not displace Tucker Act jurisdiction because Ligado "does not challenge the validity or propriety of the FCC order concerned," Appx7.  Under the Tucker Act, the trial court has jurisdiction to entertain "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C.

§ 1491(a)(1).  Claims against the United States for just compensation pursuant to the Takings Clause fall within this jurisdictional grant.  *See Acceptance Ins. Cos. Inc. v. United States*, 503 F.3d 1328, 1336 (Fed. Cir. 2007).  But "statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act."  *United States v. Bormes*, 568 U.S. 6, 12-13 (2012).

This Court has repeatedly held that the Communications Act provides a comprehensive remedial scheme that displaces Tucker Act jurisdiction, including for Fifth Amendment takings claims.  *See Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1361-65 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2647 (2022); *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1092-98 (Fed. Cir. 2018), *cert. denied*, 586 U.S. 817 (2018).  This precedent teaches that the Communications Act's displacement of Tucker Act jurisdiction extends beyond just direct challenges to the propriety and validity of FCC orders, contrary to the trial court's holding.  In *Alpine*, the Court held that the Communications Act's comprehensive remedial scheme also displaces Tucker Act jurisdiction over any claim arising from an FCC order—including takings claims—where the statutory framework can provide adequate relief.  *See id.* at 1096-97 (explaining why "the FCC had the power to grant Alpine adequate relief[] by eliminating the taking, providing compensation, or some combination").

This case arises from just such an FCC order.  Ligado sought and obtained a license expressly conditioned on Government participation, but now contends that it

10

cannot enforce its license rights against any Federal agency through the
Communications Act. Ligado's conditional license, granted by FCC order, thus forms
the predicate for all its claims, and Ligado's claims necessarily arise from the FCC's
order granting that license. Accordingly, just as in *Alpine*, the FCC can resolve
Ligado's grievances including by modifying, suspending, setting aside, or waiving the
conditions of Ligado's license, in whole or in part with respect to specific agencies,
locations, or devices, if Ligado can demonstrate that such relief is warranted. 47
C.F.R. § 25.117; *see id.* at § 1.3. Any resulting FCC order could then be appealed
through the Communications Act's appeals scheme. Such FCC action would provide
Ligado with adequate relief for any purported governmental interference with the use
of its license. *See Alpine*, 878 F.3d at 1096-98.

　　　*Second*, there is substantial ground for difference of opinion with the trial court's
holding as to whether Ligado alleged a cognizable property interest. Appx8-10. The
trial court's property interest analysis did not involve the sort of structured analysis
that this Court has undertaken when evaluating whether a Federal license constitutes
cognizable property for takings purposes. *See Fishermen's Finest, Inc. v. United States*, 59
F.4th 1269, 1275-79 (Fed. Cir. 2023) (analyzing the language of the Federal statutory
scheme and the traditional hallmarks of property among other factors in deciding a
fishing license does not constitute property for takings purposes); *Am. Pelagic Fishing
Co., L.P. v. United States,* 379 F.3d 1363, 1372-74 (Fed. Cir. 2004) (same). Rather, the

trial court primarily held that this Court in *Alpine* and *Sandwich Isles* did "not reach the issue of whether an FCC license is a valid property interest," even though those cases involved FCC licenses. Appx8. But this Court in *Alpine* and *Sandwich Isles* did not reach the downstream property interest question in either case because it held that the trial court lacked jurisdiction over the complaints due to the Communications Act's comprehensive remedial scheme.

In connection with its property interest analysis, the trial court also examined whether the agency issuing the license can "provide an adequate remedy" for the license holder. Appx9. But although the existence of an adequate remedy is relevant to the jurisdictional issue discussed above, *Alpine*, 878 F.3d at 1096-97, there is no legal support for analyzing that issue when determining whether an FCC license constitutes property for takings purposes. This Court has certainly never examined such a factor in deciding the existence of a property interest.

The D.C. Circuit's decision in *Mobile Relay Associates v. FCC,* 457 F.3d 1, 12 (D.C. Cir. 2006), further demonstrates that there is a substantial ground for difference of opinion on the property interest issue. In that case, the D.C. Circuit rejected a plaintiff's takings claim, holding that FCC licenses "confer the right to use the spectrum for a duration expressly limited by statute subject to the Commission's considerable regulatory power and authority," and that such a "right does not constitute a property interest protected by the Fifth Amendment." *Id.* at 12. The trial

court here distinguished *Mobile Relay* because it involved "an action by the FCC in limiting a license," because it is not binding, and because it did not find a lack of a property interest for all takings claims. Appx8-9. Although it is true that *Mobile Relay* is not binding on the trial court, the D.C. Circuit is an expert appellate court selected by Congress to adjudicate many FCC disputes. *See* 47 U.S.C. § 402(b). And there does not appear to be any contrary holding from any court supporting the notion that a spectrum license is property for takings purposes. In addition, in seeking to distinguish *Mobile Relay*, the trial court held, without any legal support, that a license can be cognizable property vis-à-vis one Federal agency, but not another. Accordingly, this is exactly the type of question warranting consideration under section 1292(d)(2).

Moreover, substantial grounds for a difference of opinion are shown by several other factors this Court has analyzed when determining whether a particular license constitutes a cognizable property interest for takings purposes. "[T]he parameters of a protected property interest are delimited by the law that creates the interest, and by 'existing rules and understandings' and 'background principles' derived from independent sources, such as state, federal, or common law." *Members of Peanut Quota Holders Ass'n, Inc. v. United States*, 421 F.3d 1323, 1330 (Fed. Cir. 2005) (citation omitted). And courts have paid particular attention to the text of the law defining the interest, whether the license is revocable and other traditional hallmarks of property.

13

*See United States v. Fuller*, 409 U.S. 488, 492-94 (1973); *Fishermen's Finest*, 59 F.4th at 1276-79; *Conti v. United States*, 291 F.3d 1334, 1340-44 (Fed. Cir. 2002).

Here, the language of the Communications Act makes clear that no person has an independent right to own or use spectrum, and that any limited spectrum use must flow instead from authority arising from the provisions of the Act. *FCC v. Sanders Bros. Radio Station*, 309 U.S. 470, 475 (1940) ("The policy of the [Communications] Act is clear that no person is to have anything in the nature of a property right as a result of the granting of a license."); *see* 47 U.S.C. § 304 (license applicant must "waiv[e] any claim to the use of any particular frequency or of the electromagnetic spectrum as against the regulatory power of the United States because of the previous use of the same, whether by license or otherwise"); *id.* § 301 (providing that licenses are issued for "limited periods of time," and that a license holder has no "ownership" in the subject of the license); *In re NextWave Personal Comms.*, 200 F.3d 43, 51 (2d Cir. 1999). Accordingly, although the Takings Clause provides a limit on the taking of private property, spectrum and licenses governing the use of spectrum are quintessential public assets controlled by Congress and beyond the purview of private ownership.

Other "traditional hallmarks of property" also support the conclusion that Ligado has no cognizable property interest in its license. For example, Ligado lacks the authority under the statutory scheme to freely sell, assign, or transfer it. *See Conti*, 291 F.3d at 1341-42. Spectrum licenses may be transferred only "upon application to

the [FCC] and upon finding by the [FCC] that the public interest, convenience, and necessity will be served thereby." 47 U.S.C. § 310(d). In addition, the Government maintains a high degree of control over spectrum, and "[w]here a citizen voluntarily enters into an area which from the start is subject to pervasive Government control, a property interest is likely lacking." *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1330 (Fed. Cir. 2012) (citing *Mitchell Arms, Inc. v. United States*, 7 F.3d 212 (Fed. Cir. 1993)); *see Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1385-86 (Fed. Cir. 2019).

That Ligado's spectrum license is also contingent on unfulfilled conditions only further supports the lack of a property interest. *See* 47 U.S.C. § 301 (requiring that a spectrum license-holder must comply with the "terms" and "conditions" of a license). To address potential GPS interference, the FCC attached numerous conditions (that Ligado itself proposed) to the modified license, which Ligado must satisfy before it may operate in the L-Band. *See* April 2020 Order, 35 FCC Rcd. at 3835-41. These conditions inhered in the title to any purported property arising from the FCC's order, meaning that Ligado does not have a property interest in a license conditioned upon terms that have not yet been satisfied. "[T]he [G]overnment does not take a property interest when it merely asserts a 'pre-existing limitation upon the [property] owner's title.'" *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2079 (2021) (citation omitted). The trial court nevertheless held that it was irrelevant whether Ligado had satisfied the

license's conditions because Ligado had alleged that the Government was at fault for its failure to satisfy the conditions, and the FCC had required DoD and other agencies to comply with the terms of the Order. *See* Appx3, Appx10. But the trial court misconstrued the April 2020 Order which merely states that "[c]onsistent with FCC precedent in other proceedings, we would expect Ligado and U.S. Government agencies to work together in good faith, including with regard to negotiation to resolve any disputes." April 2020 Order, 35 FCC Rcd. at 3825. Moreover, at no point did the trial court identify authority for the proposition that the FCC could require the agencies to cooperate, and by determining that it could, the trial court misinterpreted the Order.[3]

*Third*, there is substantial ground for difference of opinion with the trial court's holding that Ligado has alleged authorized Government conduct for taking purposes. *See* Appx10-11.

For takings liability to attach, the Government action at issue must be authorized. *Mitchell v. United States*, 267 U.S. 341, 345 (1925); *Hooe v. United States*, 218 U.S. 322, 335-36 (1910); *Taylor v. United States*, 959 F.3d 1081, 1089 n.4 (Fed. Cir. 2020) ("A government action cannot be a taking if . . . the government actors lacked

---

[3] Indeed, the trial court's misguided attempt to interpret the April 2020 Order further underscores our jurisdictional argument, as it is not the trial court's role to interpret FCC orders in the first instance.

the 'authority' to take the action[.]") (citations omitted); *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365-66 (Fed. Cir. 2001); *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998).

The gravamen of Ligado's complaint is that the Government has engaged in an "unlawful scheme" to prevent Ligado from using its FCC-licensed spectrum for terrestrial services. Dkt. No. 1 ¶ 1 (Compl.). Ligado alleges that DoD has unlawfully used Ligado's exclusively licensed spectrum in a manner that interferes with Ligado's use under its license; that to "conceal" such unlawful use, DoD and Commerce have "adopted a strategy of deceit and misinformation," advancing pretextual claims of harmful interference with GPS; and that DoD officials have provided false or misleading testimony to Congress in an effort to "continue to use Ligado's exclusively licensed spectrum without compensation." *Id.* at ¶¶ 1-6, 41-50, 76-90; *see* Appx4-5; Appx7-8.

Citing *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998), the trial court concluded that "in seeking damages for a taking under the Tucker Act . . . the government's action must fall 'within the scope of [the agencies'] duties'" and held that Ligado had alleged authorized action under that framework. Appx10-11. But the trial court also recognized that the substance of Ligado's takings theory rests on the notion that DoD's conduct might effect a taking *because* that conduct was inconsistent with the FCC's April 2020 Order and therefore unlawful.

17

*See* Appx7 ("[Ligado] argues that various Government actors have not complied with the Order, preventing [Ligado] from using its license."); *id.* at Appx8 ("Ligado seeks damages against the Government for allegedly not complying with the Order and taking [Ligado's] licensed spectrum."). Neither *Del-Rio* nor subsequent precedent from this Court supports the notion that a takings claim may be cognizable *because* the Government conduct is unlawful. *See Rith Energy, Inc. v. United States*, 270 F.3d 1347, 1352 (Fed. Cir. 2001) (on petition for reconsideration) ("Rith's complaints about the wrongfulness of the permit denial are therefore not properly presented in the context of its takings claim."); *Rith Energy*, 247 F.3d at 1365-1366; *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1369-70 (Fed. Cir. 2005).

The recent Panel decision in *Darby Development Co., Inc. v. United States*, 112 F.4th 1017 (Fed. Cir. 2024), does not alter the analysis. In *Darby*, the Panel endorsed the principle that Executive Branch action may be deemed "authorized" for takings purposes even if "unlawful," "if it was done within the normal scope of the agent's duties." *See id.* at 1027. As an initial matter, the Government has filed a petition for rehearing *en banc* in *Darby*, which remains pending with the Court. In any event, there is a substantial ground for difference of opinion as to whether the trial court's decision on the authority issue goes beyond *Darby*. The *Darby* majority held that, if restrictions imposed by the Executive Branch interfere with established property rights in a way that would *otherwise* constitute a taking, the Government cannot escape

takings liability by showing that the Executive Branch restrictions were not authorized by statute. *See* 112 F.4th at 1033 ("Having concluded that there is no 'lack of authorization' impediment to Appellants' takings claim, we turn now to whether their complaint stated a claim for a physical taking by the government."). The *Darby* majority thus held that the plaintiffs in that case might be able to demonstrate a compensable taking *even though* the relevant Executive Branch conduct was inconsistent with the governing statute. But neither *Darby* nor this Court's prior precedent supports the trial court's conclusion here that the Government's conduct may effect a taking *because* it was unlawful, such as being inconsistent with the Communications Act or the FCC's April 2020 Order. In fact, this Court's other precedent is contrary to such a conclusion. *See Rith Energy*, 247 F.3d at 1365-66.

Regardless of whether the illegality of particular Executive Branch conduct precludes takings liability for what would otherwise be a taking, that illegality itself cannot provide the basis for a takings claim. Indeed, such an analytical framework would largely eviscerate the distinction between a compensable taking and an actionable tort. 28 U.S.C. § 1491(a)(1) (providing that tort claims fall outside the scope of the trial court's jurisdiction). This Court should weigh in on this controlling issue of takings law upon which there are substantial grounds for a difference of opinion.

*Fourth*, there is a substantial ground for difference of opinion on the issue of whether there can be a physical taking of FCC-licensed spectrum.

The trial court failed to meaningfully grapple with whether a physical taking of Government-licensed spectrum may exist in light of the limited nature of an FCC license. Its opinion does not have a separate analysis resolving the Government's arguments regarding Ligado's physical takings claim, but the trial court did remark that spectrum "is a physical phenomenon," and implicitly appears to deem Ligado's allegations that DoD was "occupying" the spectrum to be sufficient to state a physical takings claim. Appx8-9. It is beyond cavil, however, that Ligado has no independent property right in spectrum—the Communications Act makes clear that no one can have a cognizable property interest in the spectrum itself. 47 U.S.C. § 301. At most Ligado has only a limited ability to use the licensed spectrum subject to the restrictive terms and conditions of the license, the terms of the Communications Act, and applicable regulations. Such a limited interest is not the same as having a possessory or ownership interest in the spectrum itself. Ligado might have at most an interest in the license, but the *spectrum* is not Ligado's property. 47 U.S.C. § 301. And the purported taking of an *intangible* asset like a license is viewed under the regulatory takings framework, not as a physical taking. *See Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 223-25 (1986); *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1004-06 (1984).

## III.	Immediate Appeal Will Materially Advance The Termination Of This Litigation

The question of whether an interlocutory appeal "will materially advance the termination of the litigation" focuses "in large part on considerations of 'judicial economy' and the need to avoid 'unnecessary delay and expense' and 'piecemeal litigation.'" *Reid v. United States*, 149 Fed. Cl. 328, 331 (2020) (quoting *Coast Fed. Bank*, 49 Fed. Cl. at 14 (quoting *Northrop Corp., Northrop Elecs. Sys. Div. v. United States*, 27 Fed. Cl. 795, 798-99 (1993))).

Interlocutory appeal here strongly implicates considerations of judicial economy, as well as the need to avoid unnecessary delay and expense. This case involves not only a highly technical and complex field, but also a lengthy complaint seeking nearly $40 billion from the Government and raising claims involving numerous Federal agencies, high-level Government officials, the White House, and Congress. Indeed, the complaint itself makes allegations with respect to multiple high-ranking Government officials including, among others, the Joint Chiefs of Staff, former Secretary of Commerce Wilbur Ross, former Under Secretary of Defense Michael Griffin, former Secretary of Defense Mark Esper, retired Air Force Space Command General John Raymond, former Commerce Secretary Gina Raimondo, former Secretary of Defense Lloyd Austin, and former NTIA administrator Alan

Davidson. If interlocutory appeal is not granted on these controlling legal questions, the Government will be forced into years-long, expensive litigation that will drain scarce Government resources and require discovery from numerous current and former Government officials. *See Laturner v. United States*, 135 Fed. Cl. 501, 505-06 (2017) (certifying order in part because an immediate appeal could obviate contentious and protracted discovery); *Alley's of Kingsport, Inc. v. United States*, 106 Fed. Cl. 762, 764 (2012) (certifying order in part because interlocutory review could preempt potentially broad discovery including testimony of "many high-level government officials"). In addition, Ligado's allegations implicate sensitive national security information as well as a still ongoing administrative proceeding before the FCC in which eight petitions for reconsideration of the April 2020 Order were filed and remain pending, complicating discovery even further.

## CONCLUSION

For these reasons, we respectfully request the Court to grant this petition for permission to appeal an interlocutory order under 28 U.S.C. § 1292(d)(2).

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

/s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Director

/s/ Nathanael B. Yale
NATHANAEL B. YALE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone:(202) 616-0464

BORISLAV KUSHNIR
Senior Trial Counsel

March 10, 2025                    *Attorneys for Defendant-Petitioner*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion complies with the word limit of Federal Rule of Appellate Procedure 5(c)(1) and Federal Circuit Rule 5 because the motion was generated by a computer and contains 5,163 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using Microsoft Word 2013 in a proportionally spaced typeface, 14- point Garamond font.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2025, I filed the foregoing petition using the

appellate CM/ECF system and caused copies of the petition to be sent to the

following counsel by U.S. mail and electronic mail:

Harris M. Fischman
Martin Flumenbaum
Carter E. Greenbaum
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Email: hfischman@paulweiss.com
Email: mflumenbaum@paulweiss.com
Email: cgreenbaum@paulweiss.com


/s/ Nathanael B. Yale
Nathanael B. Yale

# ADDENDUM

## INDEX TO ADDENDUM

Opinion and Order (November 18, 2024)……………………………..……..Appx1

Order granting certification (February 28, 2025)……………………………...Appx14

Docket Sheet………………………………………………………………..…..Appx15

# In the United States Court of Federal Claims

No. 23-1797L
(Filed:  November 18, 2024)

```
*************************************
                                    *
LIGADO NETWORKS LLC,                *
                                    *
                                    *
            Plaintiff,              *
                                    *
    v.                              *
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant.              *
                                    *
*************************************
```

## OPINION AND ORDER

Plaintiff Ligado Networks LLC ("Ligado") is before this Court alleging that the United States (the "Government") prevented it from using its Federal Communications Commission ("FCC") license thereby taking its property in violation of the Fifth Amendment of the United States Constitution (the "Takings Clause").  The Government moved to dismiss under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), or in the alternative under RCFC 12(b)(6).  The motion is fully briefed.

In addition, Iridium Communications Inc. and its affiliate Aireon LLC (together, "Iridium"), joined by three airline trade associations, filed a Motion for Leave to File an Amicus Brief in Support of Defendant's Motion to Dismiss.  ECF No. 12.  The Court granted the Motion.[1]  ECF No. 22.

---

[1] In the Amicus Brief in Support of Defendant's Motion to Dismiss, Amici state that, "[b]ecause a petition for reconsideration renders an FCC order non-final for purposes of judicial review, none of the many stakeholders who filed petitions for reconsideration has yet had the opportunity to challenge the [April 2020 Order] under the Administrative Procedure Act in court."  ECF No. 23 at 19.  Amici refer to the fact that there are seven motions for reconsideration filed by interested parties pending review before the FCC and one motion for reconsideration that the FCC has not yet ruled on.  Compl. ¶ 76.  Thus, the Court ordered the parties to briefly address whether the Court lacks jurisdiction because the April 2020 Order is not final.  ECF No. 12-1 at 27.  The parties both argue in their respective briefs that the pending motions for reconsideration do not deprive this Court of jurisdiction because of a lack of finality of the April 2020 Order.  ECF Nos. 24-25.  This Court agrees.  A petition for reconsideration does not alter the legal effect of an FCC decision or order.  47 U.S.C. § 405(a).  The filing of a petition for reconsideration makes an FCC order or decision non-final (and thus non-reviewable)

For the reasons set forth below, the Court **DENIES IN PART AND GRANTS IN PART** the Government's Motion to Dismiss.

## I.       Summary of the Facts

Ligado has held an FCC spectrum license authorizing it to provide Mobile Satellite Services, a service which only includes satellite use, within its licensed spectrum.  *See* Compl. ¶¶ 25-26.  Ligado sought to obtain a modified license to operate wireless terrestrial 5G services within its licensed spectrum, also known as Ancillary Terrestrial Component ("ATC") authority. Compl. ¶ 3.

In an order dated April 2020, the FCC conditionally granted Ligado's applications to modify its license giving Ligado the requested ATC authority—allowing Ligado to provide wireless terrestrial 5G services within its licensed spectrum.  *See* April 2020 Order, *In the Matter of LightSquared Technical Working Group Report and LightSquared License Modification Application*, 35 FCC Rcd. 3772, 3783 (2020) ("April 2020 Order"); *see* Compl. ¶¶ 63-68.  The April 2020 Order is the subject of this case.

## II.      History at the FCC

### A.  Ligado's FCC License Applications and the Resulting April 2020 FCC Order

In December 2015, Ligado filed applications to modify its license to include ATC authority, which would allow Plaintiff to provide wireless terrestrial 5G services within its licensed spectrum.  April 2020 Order, 35 FCC Rcd. at 3778-79.  In May 2018, following a public comment period in which concerns about the harmful interference implications of Ligado's plan were raised, Ligado amended its 2015 license modification applications by proposing several restrictive conditions, including a reduction in base station power and specific measures to mitigate concerns about potential harmful interference to Federal Government operations.  *Id*. at 3780-82.  In response, in December 2019, the National Telecommunications and Information Administration ("NTIA"), which manages the Federal Government's use of spectrum, notified the FCC that, based on its own assessment of the potential impact of Ligado's operations "to [NTIA's] missions, national security, and the U.S. economy," it could not recommend approval of the applications.  *Id*. at 3782-83, 3796.  The Order explains that opponents of Ligado's applications were chiefly concerned with "interference with GPS receiver operations."  *Id.* at 3795.

---

with respect to the right to seek further judicial review *by the party filing the petition* under the Communications Act.  *TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 133 (D.C. Cir. 1989).  The Communications Act states that the filing of a petition for reconsideration does not "operate in any manner to stay or postpone the enforcement" of such an order.  47 U.S.C. § 405(a).  Thus, this Court concludes that the motions for reconsideration filed by other interested parties pending before the FCC do not deprive this Court of jurisdiction on the ground that the April 2020 Order lacks finality.

Then, in April 2020, the FCC granted Ligado's amended license modification applications seeking ATC authority and adopted the stringent conditions proposed by Ligado. *Id.* at 3783; *see* Compl. ¶¶ 63-68.  The FCC filed the order over the NTIA's objections, finding that "harmful interference concerns relating to GPS are effectively resolved based on the parameters of Ligado's amended modification applications, the test/data analyses presented in the record, and the conditions imposed" in the order.  April 2020 Order, 35 FCC Rcd. at 3841-42.

A few of the conditions in the April 2020 Order include that Ligado: (1) provide a 23 MHz guard-band of its licensed spectrum to separate its terrestrial base-station transmissions from neighboring operations; (2) reduce the base-station power levels from its initial proposal; (3) engage in a robust information exchange and coordination program with Government agencies before it could start its operations; (4) provide quarterly reports to the FCC concerning the progress of its satisfaction of these conditions; and (5) "cooperate directly" with the Department of Defense ("DOD") and the Department of Commerce ("DOC") to "expeditiously replace or repair as needed any U.S. Government GPS devices that experience or are likely to experience harmful interference from Ligado's operations." *Id.* at 3835- 42.[2]

And finally, the Order states, "Failure to comply with these Conditions may subject Ligado to monetary forfeitures and/or the partial loss of ATC authority in a relevant geographic area based upon the type and scope of violation, or complete loss of such ATC authority." *Id.* at 3835.  Most relevant here is that the FCC recognized that the final requirement would require affected agencies to cooperate with Ligado.  Compl. ¶ 85.  The FCC stated that "[c]onsistent with FCC precedent in other proceedings, we would expect Ligado and U.S. Government agencies to work together in good faith, including with regard to negotiation to resolve any disputes."  April 2020 Order, 35 FCC Rcd. at 3825.

It appears from the record that Ligado has not informed the FCC that it has satisfied the conditions imposed by the FCC's April 2020 Order.  Ligado has not alleged otherwise.

### B.  May 22, 2020, Proceedings before the FCC

On May 22, 2020, NTIA, on DOD's behalf, filed a petition with the FCC for a stay of the April 2020 FCC Order and a petition for reconsideration.  Compl. ¶ 76.  On January 19, 2021, the FCC denied NTIA's petition to stay the April 2020 FCC Order.  Compl. ¶ 80.  The FCC found that NTIA had not met any of the requirements for a stay.  *Id.*  The FCC has not ruled on NTIA's reconsideration petition and there are seven other reconsideration petitions pending review.  Compl. ¶ 76.

### III.    Proceedings before the United States Court of Federal Claims

### A.  Plaintiff's Complaint

---

[2] With respect to the requirement for an exchange of information, the April 2020 Order directed Ligado to cooperate directly with any agency whose GPS devices may be adversely affected. *Id.* ¶ 101.

3

**APPX3**

The Complaint alleges four separate claims under the Takings Clause alleging physical, per se (i.e., categorical) regulatory, regulatory, and legislative takings. Compl. ¶¶ 134-61. To support its takings claims, Plaintiff alleges that "Ligado's exclusive right to use this spectrum pursuant to both its duly authorized FCC license and ATC authority is property protected by the Fifth Amendment to the U.S. Constitution . . . ." Compl. ¶ 136.

Plaintiff claims that the DOD committed a physical taking of Ligado's ability to provide terrestrial services in its exclusively licensed spectrum by physically occupying Ligado's spectrum, Compl. ¶¶ 5; 128, 124. Ligado alleges that the DOD has been "operating previously undisclosed systems that use or depend on Ligado's spectrum without compensation." *Id*. Plaintiff explains,

> To the extent DOD's systems are transmitting or receiving signals in Ligado's allocated spectrum, that is a physical taking of Ligado's licensed spectrum, including its ATC authority. To the extent DOD's systems are receiving signals adjacent to Ligado's allocated spectrum, thus requiring the creation of a "dead zone" or buffer in Ligado's allocated spectrum to avoid harmful interference with DOD's systems, that too is a physical taking of Ligado's licensed spectrum, including its ATC authority.

Compl. ¶ 141.

Additionally, Plaintiff claims that both a categorical or a regulatory taking occurred when DOD refused to cooperate with Ligado according to the Order. In its Complaint, Ligado states that it has attempted to exchange information with the government, per the conditions, but the DOD and the DOC have refused to reciprocate. *Id*. ¶¶ 77-83. Further, Plaintiff alleges that "the DOD (with the Department of Commerce's assistance) made false or misleading claims to the FCC, Congress, the White House, other federal agencies, and the public about the effects of Ligado's proposed 5G terrestrial services on Global Position Systems ("GPS")." *Id*. at 2. Plaintiff alleges that the DOD, the DOC, and the NTIA have affected both a categorical and regulatory taking by:

> (i) threatening Ligado's business partners in order to interfere with the formation or performance of contracts necessary for the development of Ligado's authorized terrestrial services; (ii) failing to engage with the regulatory process and thereby delaying FCC action on Ligado's Applications; (iii) failing to implement the provisions of the April 2020 FCC Order, which provides for federal agencies to engage in information sharing and planning discussions in order to facilitate the deployment of Ligado's terrestrial services; (iv) making submissions to Congress to cause it to include punitive provisions in the NDAA to prevent Ligado from utilizing the spectrum for terrestrial services; (v) failing to certify under the NDAA that Ligado's use of its allocated spectrum for terrestrial services does not cause harmful interference with GPS receivers even though it is clear that it does not; and (vi) publishing incomplete, misleading, and false information about the potential

**APPX4**

for harmful interference from Ligado's development of its authorized spectrum for terrestrial services.

Compl. ¶¶ 145, 151.

Finally, Plaintiff alleges that a legislative taking occurred when Congress passed the National Defense Authorization Act for fiscal year 2021 ("NDAA") giving the DOD the power to effectively block Ligado from ever using its ATC authority.  Plaintiff alleges that:

> Congress' passage of Subtitle E of Title XVI of the 2021 NDAA—which, among other things, takes away the right of any company that partners with Ligado on its terrestrial services to do business with DOD (the largest government agency and employer in the United States)—destroyed Ligado's ability to form the partnerships necessary to deploy terrestrial services in its spectrum and thereby effected a legislative taking of Ligado's property rights in its FCC license and ATC authority.

Compl. ¶ 155.  Thus, Plaintiff claims that the NDAA "rendered Ligado unable to proceed with its FCC approved plans," which prevented Ligado from using its authorized spectrum.  Compl. ¶¶ 105, 160.  Plaintiff concludes that this taking has "catastrophic economic effects on Ligado, preventing it from earning income from the ATC authority conferred by its FCC-licensed spectrum." *Id.*

## B.  The Government's Motion in Response to Plaintiff's Complaint

The Government moves to dismiss Plaintiff's Complaint under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), contending that Plaintiff's claim should be dismissed for lack of subject-matter jurisdiction because the Communication Act's comprehensive remedial scheme displaces this Court's jurisdiction.  Def.'s Mot. to Dismiss, ECF No. 11.  Further, the Government moves to dismiss pursuant to RCFC 12(b)(6) arguing that Plaintiff fails to state a claim because Plaintiff's Complaint does not allege a cognizable takings claim.

## C.  Supplemental Briefing in Response to the Court's Questions

After reviewing the parties' respective briefs, the Court ordered the parties to respond to the following additional questions by way of supplemental briefing:

> 1. The FCC granted Plaintiff a license with conditions attached. Have the conditions been met? Are the conditions, conditions precedent or on-going?
> 2. If the conditions are conditions precedent, and certain conditions require coordination and cooperation with certain government entities, how can Plaintiff comply with the conditions if the government entities refuse to cooperate or coordinate?
> 3. How can the FCC remedy refusal by government agencies to cooperate and coordinate if they refuse to do so?

**APPX5**

4. The cases cited by the parties that hold that an FCC license is not a property interest appear to apply only to FCC action in not granting, revoking or limiting a license. In this case, according to Plaintiff, government entities other than the FCC are occupying or interfering with the granted spectrum. Why is this not a taking? Is the FCC able to remedy the occupation of or interference with Plaintiff's spectrum by other government entities?

5. Defendant correctly states that, in order for a compensable taking to occur, the taking must be authorized by the government. It would appear that the government entities alleged to have occupied Plaintiff's licensed spectrum acted within their authority. Doesn't this satisfy the requirement of authorized government activity?

6. Regarding the 2021 National Defense Authorization Act: doesn't Congress have the right to modify agency action? If so, how can there be a legislative taking?

7. How can a license, which is not a property interest vis-à-vis the FCC, become one vis-à-vis other government entities? Is the Plaintiff's complaint best characterized as an interference with its license by other government entities, which is a tort and which can be remedied by the FCC?

ECF No. 7. The parties filed their supplemental briefs responding to these questions on September 9, 2024. ECF No. 29, 30.

## IV.   JURISDICTION AND STANDARD OF REVIEW

The Tucker Act authorizes the Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). This grant of jurisdiction covers claims against the United States for just compensation pursuant to the Takings Clause. *See Acceptance Ins. Cos. Inc. v. United States*, 503 F.3d 1328, 1336 (Fed. Cir. 2007). The Tucker Act, however, serves only a "gap-filling role" that permits "action[s] against the United States for the breach of monetary obligations *not otherwise judicially enforceable.*" *United States v. Bormes*, 568 U.S. 6, 12-13 (2012) (emphasis added). Thus, where another "precisely drawn, detailed statute" contains "its own judicial remedies," "the specific remedial scheme [of the other statute] establishes the exclusive framework for the liability Congress created." *Id.* Or stated more simply: "[S]tatutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act." *Id.* at 13; *see also Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1328 (2020) ("The Tucker Act yields when the obligation-creating statute provides its own detailed remedies . . . .").

The burden of establishing the Court's subject matter jurisdiction rests with the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). When faced with a motion to dismiss for lack of subject matter jurisdiction, pursuant to the Rules of the Court of Federal Claims ("RCFC") 12(b)(1), a court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

**APPX6**

"To state a claim for a taking under the Fifth Amendment, a plaintiff must identify a legally cognizable property interest." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1384-1385 (Fed. Cir. 2019) (citing *Tex. State Bank v. United States*, 423 F.3d 1370, 1378 (Fed. Cir. 2005)). "The Constitution neither creates nor defines the scope of property interests compensable under the Fifth Amendment." *Conti v. United States*, 291 F.3d 1334, 1340 (Fed. Cir. 2002) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Property interests arise from "existing rules and understandings and background principles derived from an independent source, such as state, federal, or common law. . . ." *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1213 (Fed. Cir. 2005) (internal quotation marks omitted). To support a takings claim, a property interest must be more than a "mere unilateral expectation or an abstract need." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980).

## V.  DISCUSSION

### A.  The Government's Motion to Dismiss Pursuant to RCFC 12(b)(1)

As a preliminary matter, the Court considers the Government's argument to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). In its Motion to Dismiss, the Government argues that the Communication Act's comprehensive remedial scheme displaces this Court's jurisdiction over takings claims arising from FCC licensing decisions, and thus Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction. In determining whether a statutory scheme displaces Tucker Act jurisdiction, a court must "examin[e] the purpose of the [statute], the entirety of its text, and the structure of review that it establishes." *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1093 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 78 (2018) (quoting *Horne v. Dep't of Agriculture*, 569 U.S. 513, 527 (2013)).

The Federal Circuit has made clear that where a plaintiff's claim raises the type of challenge that implicates 47 U.S.C. § 402(a), then the claim, regardless of how it is styled, is subject to the Act's comprehensive remedial scheme rather than the Tucker Act's gap-filling grant of jurisdiction. Thus, the Court must determine whether Plaintiff's claims raise the type of challenge that implicates 47 U.S.C. § 402(a). *Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1365 n.4 (Fed. Cir. 2021). The Communications Act provides that "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the [FCC] under this chapter . . . shall be brought" to the regional courts of appeals. 47 U.S.C. § 402(a); 28 U.S.C. § 2342(1). The Government argues that Plaintiff's Complaint, "challenge[s] [] the terms of its FCC license." Def.'s MTD at 17. Plaintiff contends that its claims are not challenges to FCC orders and instead are takings claims against the Government. ECF No. 16 at 19.

Plaintiff, however, does not challenge the validity or propriety of the FCC order concerned. Instead, Plaintiff argues that various Government actors have not complied with the Order, preventing Plaintiff from using its license. *See* Compl. ¶¶ 140-41, 144-46, 149-52, 155-60. Plaintiff asks the Court, "to provide Ligado just compensation for . . . [the Government's] taking of Ligado's rights pursuant to the April 2020 FCC Order and prior FCC orders." Compl. at 68. Further, Plaintiff alleges "The stonewalling of Ligado by DOD and others has further stymied Ligado's ability to use its FCC license and ATC authority." *See* Compl. ¶ 79. Thus,

7

Ligado does not seek to modify or remove any conditions of the Order. Instead, Ligado seeks damages against the Government for allegedly not complying with the Order and taking Plaintiff's licensed spectrum.

The Federal Circuit made clear that "we do not imply that all constitutional challenges to the FCC's actions must be presented to the FCC before they can be asserted." *Sandwich Isles*, 992 F.3d at 1365 n.4. *Sandwich Isles* thus applies only to circumstances that specifically involve a "challenge[] to the FCC's actions." *Id.* Accordingly, to the extent Plaintiff's claim does not seek to "enjoin, set aside, annul, or suspend any order of the [FCC] under this chapter," 47 U.S.C. § 402(b) and 28 U.S.C. § 2342(1) are not applicable, and this Court has jurisdiction to consider Plaintiff's claim. 47 U.S.C. § 402(a); 28 U.S.C. § 2342(1); *see Regional Rail Reorganization Cases,* 419 U.S. 102, 127-56 (1974). Thus, because this Court has jurisdiction to consider Plaintiff's claim, the Government's Motion to Dismiss pursuant to RCFC 12(b)(1) is **DENIED**.

## B. The Government's Motion to Dismiss Pursuant to RCFC 12(b)(6)

### 1. Is the FCC License a Valid Property Interest?

Ligado bases its alleged property interest on the fact that it holds an FCC license pursuant to the Communications Act, and in the April 2020 Order, the FCC modified that license to provide it with authority, subject to numerous terms and conditions, for terrestrial use. Compl. ¶¶ 135-138. In its Motion to Dismiss, the Government argues that Ligado's Complaint fails to state a claim because licenses issued by the FCC under the Communications Act do not constitute cognizable property for takings purposes, and thus Plaintiff cannot assert a valid takings claim.

The essential question in this case is whether the license granted to Ligado to utilize part of a designated spectrum under certain conditions is property for the purpose of asserting a takings claim. Although the Government cites to precedent involving a takings claim against the FCC, these cases do not reach the issue of whether an FCC license is a valid property interest. *See Sandwich Isles*, 992 F.3d at 1361-65; *Alpine PCS, Inc.*, 878 F.3d at 1092-98, ECF No. 11 at 24. Instead, in these cases the Federal Circuit affirmed holdings from this Court which dismissed takings claims against the FCC for lack of jurisdiction because the Communication Act's comprehensive remedial scheme displaces this Court's jurisdiction over takings claims arising from FCC licensing decisions. *See id.* The Government points to one case in which an FCC license has been considered not a property right and therefore not subject to a taking. *See* ECF No. 11 at 30-32 (citing *Mobile Relay Associates v. F.C.C*, 457 F.3d 1, 12 (D.C. Cir. 2006)). However, this case involves an action by the FCC in limiting a license. *Mobile Relay Associates*, 457 F.3d at 12. Therefore, there is legal support for the argument that vis-à-vis the FCC a license is not property.[3] But this case is about another government agency, the Department of

---

[3] The Court does not agree with the Government's attempt to inflate the holding in *Mobile Relay Associates* into a "categorical" statement that an FCC license is not property for purposes of a taking claim across the board: "This right does not constitute a property interest protected by the Fifth Amendment." *Mobile Relay Associates*, 457 F.3d at 12. The holding

Defense, "occupying" part of the spectrum licensed to Ligado.  "Occupy" is, of course, a tendentious term in favor of Ligado's argument, but it seems an apt.  The electro-magnetic spectrum is a physical phenomenon, and the Department of Defense ("DOD") is accused of using it to the exclusion of Ligado, which has been granted the right to use it, albeit with limitations.  This Court, therefore, holds that, for purposes of the Motion to Dismiss, that Ligado's FCC license is a property interest vis-à-vis DOD but not vis-à-vis the FCC.

It is not clear that the FCC could provide an adequate remedy for Ligado.  *See Alpine PCS, Inc.*, 878 F.3d at 1098 (finding that the Communication Act's statutory scheme afforded the licensee "'a ready avenue' to bring its takings claim and displaces Tucker Act jurisdiction over that claim" because the licensee "could have raised a constitutional takings claim; the FCC had the authority to grant relief; and the D.C. Circuit had jurisdiction to review whether a taking occurred."); *Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1365 n.4 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2647 (2022) (explaining that where "the FCC is in the position to prevent an alleged taking in the course of its own proceedings, the agency must be made aware of any such claim," which is "then subsumed into the agency's final decision and can be appealed only to the court of appeals").  As stated above, these cases arise from FCC licensing decisions.  The Court is not aware of any law that holds that the FCC has the authority to award monetary damages for improper occupation of all or part of a spectrum licensed to another.  Besides pointing to remedies for intransigence and the FCC's tools for dispute resolution, the Government does not cite to specific legislation or regulation regarding the FCC's authority to remedy Ligado's specific claim.[4]  The Government also spends some time on modification of the conditions imposed by the FCC.  ECF No. 11 at 31-33.  But Ligado's argument is—assuming that the conditions are satisfied—the FCC cannot restore to Ligado whatever part of the licensed spectrum DOD is occupying or can award monetary damages for the taking of it.

In supplemental briefing, the Court asked the parties: "Is the FCC able to remedy the occupation of or interference with Plaintiff's spectrum by other government agencies?"  The Government did not address this issue in its response, although discussed it in its supplemental

---

regarding the plaintiff's taking claim was in the context of FCC regulation, like all the other cases cited by the Government.  Furthermore, the statement would be *dictum* if it were to be expanded to all takings claims, as such a conclusion was not necessary to the decision.  Finally, the case is not binding on this Court.

[4] The Government's supplemental brief focuses on intransigence and informal coordination.  "If Ligado informs the Commission of its concerns about alleged agency bad faith, the FCC can engage NTIA assistance, to address alleged intransigence.  The FCC could set aside or suspend the conditions at issue, in whole or with respect to the specific agencies, locations, or devices at issue."  ECF No. 29 at 4 (citing 47 C.F.R. § 25.117).  The Government's supplemental brief also states, "FCC routinely resolves coordination disputes between Federal and non-Federal operators through informal means, putting it in a strong position to remedy alleged bad faith by agencies. Indeed, the 2014 precedent cited in the April 2020 Order contemplated "informal negotiation, mediation, or non-binding arbitration" to "clearly define and narrow the issues for formal agency resolution by NTIA, the Commission, or jointly, as applicable."  ECF No. 29 at 5 (citing AWS-3 Notice, 29 FCC Rcd. at 8539).

brief.[5]  But in its Motion to Dismiss, in addition to promoting the modification of conditions as a remedy, the Government focused on remedies for intransigence and for informal coordination.[6] The Court's own research, however, discovered the following:

> The Commission and its Enforcement Bureau enforce the Communications Act and the Commission's rules and orders in two primary ways: (1) by initiating investigations, and taking appropriate action if violations are found; and (2) by resolving disputes between industry participants either through mediation and settlement or adjudication of formal complaints.

Federal Communications Commission, https://www.fcc.gov/general/enforcement-primer (last visited October 25, 2024).  What is "appropriate action," and is this case a dispute between "industry participants"?  The Court is not clear on whether the FCC can be an adequate remedy. For purposes of a Motion to Dismiss, the fact that the Government has not been able to point to any FCC authority that would address Ligado's claim, moves the Court to side with Ligado on this point.

### 2. Conditions

The Government argues that, even if an FCC license is property for purposes of a takings claim, Ligado has not satisfied the conditions precedent to using the license.  ECF No. 11 at 26, 37.  On the contrary, Ligado argues that the conditions are ongoing not precedent. In the Court's view, the only condition of any significance is the one requiring Ligado to coordinate with agencies, including DOD, to address potential GPS interference.  The others seem to depend on this one. Even if all the other conditions were satisfied, this one would prevent the implementation of the license according to the Government's condition precedent argument. Ligado alleges that the DOD, the DOC, and the National Telecommunications and Information Administration ("NTIA") refuse to engage with Ligado.  ECF No. ¶ 145.  Accepting this claim to be true for purposes of a motion to dismiss, the Court agrees with Ligado that "the government argues that it cannot be held liable for a taking because DOD has nullified Ligado's property interest by refusing to implement the Order."  ECF No. 30 at 3.

### 3. Government Authorization

*Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998) requires that in seeking damages for a taking under the Tucker Act that the government's action must fall "within the scope of [the agencies'] duties."  As Ligado states in its response to

---

[5] The Government argues in its supplemental brief that, Ligado does not have a property right, and thus, any "questions that examine whether a taking has occurred – such as the nature of the alleged Governmental action – are therefore irrelevant to the Court's analysis under step one."  ECF No. 29 at 7-8.

[6] This is because Ligado argues that the DOD refuses to cooperate with Ligado, preventing it from fulfilling one of the conditions that the FCC imposed on the license.  ECF No. 16 at 31.

**APPX10**

Question 5 posed by the Court: "Each of the actions that the government highlights unquestionably falls within DOD's authority—to disseminate information, including to Congress; to withhold government contracts from Ligado's business partners pursuant to the NDAA; and to protect GPS under 10 USC sec. 2281." ECF No. 30 at 6. The Court agrees with Ligado that the actions of the government agencies were authorized.

### 4. 2021 National Defense Authorization Act

The text of Sections 1661-1664 does not state that Ligado may not use the spectrum assigned to it by the FCC license. *See* 2021 NDAA, Pub. L. 116-283, §§ 1661-1664, 134 Stat. 3388, 4073-76 (2021). But Ligado asserts that it effectively does so.[7] Section 1662 forbids the Secretary of Defense from entering into contracts with an entity that utilizes the part of the spectrum licensed to Ligado "unless the Secretary has certified to the congressional defense committees that such operations do not cause harmful interference to a Global Positioning System device of the Department of Defense." *Id.* at § 1662. Section 1663 provide for a study by the National Academies to be commissioned by the Secretary to "carry out an independent technical review" of the FCC Order "to the extent that such Order and Authorization affects the devices, operations, or activities" of DOD. *Id.* at § 1663. Section 1664 states that DOD cannot use funds to comply with the FCC Order until the secretary "submits to the congressional defense committees an estimate of the extent of covered costs and the range of eligible reimbursable costs associated with harmful interference" to the DOD's GPS receivers. *Id.* at § 1664.

According to the Government, the National Academies of Science, Engineering, and Medicine (NASEM) "found that high-precision GPS receivers would experience significant harmful interference from Ligado's proposed terrestrial operations, that the conditions in the FCC Order did not resolve DOD's harmful interference concerns, and that the FCC's mitigation conditions were impractical in many circumstances." ECF No. 11 at 12. The Secretary of Defense has not made the certification to the defense committees as provided by section 1662, presumably because of the NASEM Report.[8] ECF No. 16 at 17-18. Thus, the DOD may not contract with entities using Ligado's spectrum for commercial terrestrial operations. According to Ligado, "[i]n practice, this means that DOD cannot do business with any entity that contracts with Ligado for ATC operations in its spectrum." ECF No. 16 at 47. Ligado further avers that "[b]ecause 'the ability to contract with DOD is essential to businesses operating in the telecommunications industry,' not a single company has agreed to work with Ligado since the NDAA." ECF No. 16 at 48.

---

[7] "The NDAA makes it impossible for Ligado to use the ATC authority conferred by the FCC license without DOD's sign off—effectively blocking Ligado from using its ATC authority." ECF No. 16 at 17.

[8] The Court has no information about the estimate of costs provided in section 1664 other than Ligado's statement that DOD "has refused to certify estimates to replace potentially affected GPS devices under Section 1664." ECF No. 16 at 18.

Both parties agree that the FCC can modify or revoke any license that it has granted and that, if it does so, a takings claim does not lie. If the FCC can do this, it follows that Congress may do so as well. In enacting the NDAA with sections 1662-64, Congress effectively limited the FCC Order, apparently because it was concerned that harmful interference with DOD operations would ensue. Thus, because the Secretary of Defense has not made the certification pursuant to section 1662, it may not contract with any entity that uses Ligado's spectrum even though to do so destroys Ligado's business. Furthermore, because the DOD has not provided the cost estimate provided in section 1664, it cannot expend department funds to comply with the FCC Order. Although the Court has presumed that the DOD did not certify as provided in 1662 because of the NASEM Report, the Court does not know why the DOD has not made the cost estimate in 1664. In any event, Ligado argues that its business will be destroyed by the lack of certification in 1662, which appears to have a rational basis. Therefore, puzzlement over the lack of estimate in 1664 does not affect the outcome.

Returning to the "FCC License As Property" notion, if an FCC license is not property vis-à-vis the FCC, then it is also not property vis-à-vis Congress. Just as the FCC can terminate a license without effecting a taking, so Congress's limitations on the license, even if they effectively terminate it, cannot be challenged as a taking. Therefore, Ligado's claims for a legislative taking cannot go forward.

But what does this conclusion say about Ligado's takings claim based on the "occupation" of its licensed spectrum by the DOD? Per the NDAA, the DOD may not contract with entities operating in Ligado's spectrum and DOD may not use department funds to comply with the FCC Order. But the Court does not see here a limitation on the license as such. Congress has not taken over Ligado's licensed spectrum. The provisions of the NDAA affect the DOD, not Ligado—at least directly. Therefore, it seems that parts of Ligado's claims survive.

At the outset, the Court notes that for purposes of the Motion to Dismiss, the Court must accept the truth of Ligado's allegations. Therefore, the Court finds that Ligado's licensed spectrum is property except insofar as the Government has limited it by the NDAA. The Court also finds that the FCC's conditions basically require or depend on cooperation with the DOD to work out a modus operandi with the DOD, which cooperation (according to Ligado) has been frustrated by the DOD. Therefore, Ligado's case may proceed even if the FCC's conditions are conditions precedent. Finally, the Court finds that the DOD's alleged actions are authorized. Thus, the Court **GRANTS IN PART AND DENIES IN PART** the Government's Motion to Dismiss pursuant to RCFC 12(b)(6).

## VI.    CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** the Government's Motion to Dismiss. The Court **ORDERS** the Government to file its Answer to Plaintiff's Complaint within 45 days from the date of this Opinion and Order.

**IT IS SO ORDERED.**

**APPX12**

s/Edward J. Damich
EDWARD J. DAMICH
Senior Judge

**APPX13**

# In the United States Court of Federal Claims

No. 23-1797L
(Filed:  February 28, 2025)

```
*************************************
                                    *
LIGADO NETWORKS LLC,                *
                                    *
                                    *
                 Plaintiff,         *
                                    *
      v.                            *
                                    *
THE UNITED STATES,                  *
                                    *
                 Defendant.         *
                                    *
*************************************
```

## <u>ORDER</u>

After careful consideration the Court GRANTS Defendant's Motion to Certify the Court's November 18, 2024, Opinion and Order for Interlocutory Appeal and amends the order to include the following express finding under 28 U.S.C. § 1292(d)(2):

> The Court finds that this order involves a controlling question of law with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

The Court further stays the proceedings pending appeal.

**IT IS SO ORDERED.**

s/Edward J. Damich
EDWARD J. DAMICH
Senior Judge

**APPX14**

# US Court of Federal Claims
## United States Court of Federal Claims (COFC)
## CIVIL DOCKET FOR CASE #: 1:23-cv-01797-EJD

LIGADO NETWORKS LLC v. USA                    Date Filed: 10/12/2023
Assigned to: Senior Judge Edward J. Damich    Jury Demand: None
Demand: $39,000,000,000                        Nature of Suit: 514 Taking - Other
Cause: 28:1491 Tucker Act                      Jurisdiction: U.S. Government Defendant

**Plaintiff**

**LIGADO NETWORKS LLC**          represented by    **Harris Fischman**
                                                    Paul, Weiss, et al.
                                                    1285 Avenue of the Americas
                                                    New York, NY 10019
                                                    212-373-3000
                                                    Email: hfischman@paulweiss.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**USA**                          represented by    **Nathanael Brown Yale**
                                                    U.S. Department of Justice (C)
                                                    Commerical Litigation Branch, Civil
                                                    Division
                                                    Post Office Box 480
                                                    Ben Franklin Station
                                                    Washington, DC 20044
                                                    202-616-0464
                                                    Fax: 202-514-8624
                                                    Email: nathanael.b.yale@usdoj.gov
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Amicus**

**IRIDIUM COMMUNICATIONS, INC.**

**Amicus**

**AIREON LLC**

**Amicus**

**AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL**

**Amicus**

**AIRLINES FOR AMERICA**

**Amicus**

**APPX15**

**INTERNATIONAL AIR TRANSPORT
ASSOCIATION**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/12/2023 | 1 | COMPLAINT against USA (DOD) (Filing fee $402, Receipt number AUSFCC-9075865) (Copy Served Electronically on Department of Justice), filed by LIGADO NETWORKS LLC. **Answer due by 12/11/2023.** (Attachments: # 1 Civil Cover Sheet)(vds) (Entered: 10/13/2023) |
| 10/12/2023 | 2 | Rule 7.1 Disclosure Statement, filed by LIGADO NETWORKS LLC. Service: 10/12/2023.(vds) (Entered: 10/13/2023) |
| 10/13/2023 | 3 | Notice of Random Assignment Pursuant to Rule 40.1(a) to Judge Edward J. Damich. (vds) (Entered: 10/13/2023) |
| 10/13/2023 | 4 | NOTICE of Designation of Electronic Case. (vds) (Entered: 10/13/2023) |
| 10/24/2023 | 5 | NOTICE of Appearance by Nathanael Brown Yale for USA . (Yale, Nathanael) (Entered: 10/24/2023) |
| 11/24/2023 | 6 | MOTION for Extension of Time until 1/25/24 to File Response *to Complaint*, filed by USA.**Response due by 12/8/2023.**(Yale, Nathanael) (Entered: 11/24/2023) |
| 11/29/2023 | 7 | RESPONSE to 6 MOTION for Extension of Time until 1/25/24 to File Response *to Complaint and Unopposed Motion for Extension of Time until 4/7/24 to File Opposition to Motion to Dismiss*, filed by LIGADO NETWORKS LLC.**Reply due by 12/6/2023.** (Fischman, Harris) (Entered: 11/29/2023) |
| 12/04/2023 | 8 | ORDER granting 6 MOTION for Extension of Time until 1/25/24 to File Response *to Complaint.* **Defendant's Answer due by 1/25/2024. Plaintiff's Opposition due by 4/8/2024. Signed by Senior Judge Edward J. Damich. (hem) Service on parties made. (Entered: 12/04/2023)** |
| 01/19/2024 | 9 | Unopposed MOTION for Leave to Exceed Page Limit of motion to dismiss by 25 pages , filed by USA.**Response due by 2/2/2024.**(Yale, Nathanael) (Entered: 01/19/2024) |
| 01/19/2024 | 10 | ORDER denying 9 Motion for Leave to File Excess Pages. The Court, however, will grant Defendant an additional 5-pages beyond the 40-page limitation set by Rule 5.4(b)(1) of the Rules of the Court of Federal Claims. Signed by Senior Judge Edward J. Damich. (hem) Service on parties made. (Entered: 01/19/2024) |
| 01/25/2024 | 11 | MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6) , filed by USA. **Response due by 4/8/2024.** (Attachments: # 1 Appendix)(Yale, Nathanael) Modified on 2/1/2024 *\*\*Pursuant to 8 Order, Plaintiff's Response to Defendant's 11 Motion to Dismiss is reset and is due by 4/8/2024.\*\** (hw1). (Entered: 01/25/2024) |
| 02/09/2024 | 12 | MOTION for Leave to File Amicus Brief *in Support of Defendants' Motion to Dismiss (Partially Opposed)*, filed by IRIDIUM COMMUNICATIONS, INC., AIREON LLC, AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, AIRLINES FOR AMERICA, INTERNATIONAL AIR TRANSPORT ASSOCIATION.**Response due by 2/23/2024.** (Attachments: # 1 Proposed Amicus Brief)(Waxman, Seth) (Entered: 02/09/2024) |
| 02/23/2024 | 13 | RESPONSE to 12 MOTION for Leave to File Amicus Brief *in Support of Defendants' Motion to Dismiss (Partially Opposed)* , filed by LIGADO NETWORKS LLC.**Reply due by 3/1/2024.** (Attachments: # 1 Appendix)(Fischman, Harris) (Entered: 02/23/2024) |

**APPX16**

| 03/15/2024 | 14 | Unopposed MOTION for Leave to Exceed Page Limit of Opposition to Defendants' Motion to Dismiss by 5 pages , filed by LIGADO NETWORKS LLC.**Response due by 3/29/2024.**(Fischman, Harris) (Entered: 03/15/2024) |
|---|---|---|
| 03/18/2024 | 15 | ORDER granting 14 Motion for Leave to File Excess Pages. Signed by Senior Judge Edward J. Damich. (hem) Service on parties made. (Entered: 03/18/2024) |
| 03/25/2024 | 16 | RESPONSE to 11 MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6) *(Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint)*, filed by LIGADO NETWORKS LLC.**Reply due by 4/8/2024.** (Fischman, Harris) (Entered: 03/25/2024) |
| 03/29/2024 | 17 | MOTION for Extension of Time until 5/6/24 to File Reply as to 11 MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6) , filed by USA.**Response due by 4/12/2024.**(Yale, Nathanael) (Entered: 03/29/2024) |
| 04/01/2024 | 18 | ORDER granting 17 Motion for Extension of Time to File Reply as to 11 MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6). **Reply due by 5/6/2024.** Signed by Senior Judge Edward J. Damich. (hem) Service on parties made. (Entered: 04/01/2024) |
| 04/01/2024 | 19 | MOTION For Pro Hac Vice participation (Attorney: Donald B. Verrilli, Jr.. Is attorney admitted to her/his highest state court? Yes. Name of court: District of Columbia. , filed by LIGADO NETWORKS LLC.(Fischman, Harris) (Entered: 04/01/2024) |
| 04/03/2024 | 20 | MOTION for Status Conference */ Plaintiff's Motion to Schedule a Pretrial Conference to Expedite Scheduling Oral Argument Under RCFC 16(a)*, filed by LIGADO NETWORKS LLC.**Response due by 4/17/2024.** (Attachments: # 1 Declaration of Eric Harrington) (Fischman, Harris) (Entered: 04/03/2024) |
| 04/04/2024 | 21 | ORDER denying 20 Motion for Status Conference. Signed by Senior Judge Edward J. Damich. (hem) Service on parties made. (Entered: 04/04/2024) |
| 04/24/2024 | 22 | ORDER granting 12 Motion for Leave to File Amicus Brief. Iridium is directed to file the proposed amicus brief, ECF No. 12-1, on or before April 26, 2024. The parties are directed to file briefs, no more than 3-pages in length, on or before May 1, 2024, addressing the issue specified in this Order. Signed by Senior Judge Edward J. Damich. (hem) Service on parties made. (Entered: 04/24/2024) |
| 04/24/2024 | 23 | AMICUS BRIEF , filed by AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, AIREON LLC, AIRLINES FOR AMERICA, INTERNATIONAL AIR TRANSPORT ASSOCIATION, IRIDIUM COMMUNICATIONS, INC.. (Waxman, Seth) (Entered: 04/24/2024) |
| 05/01/2024 | 24 | RESPONSE to 22 Order on Motion for Leave to File Amicus Brief, 23 Amicus Brief , filed by LIGADO NETWORKS LLC. (Fischman, Harris) (Entered: 05/01/2024) |
| 05/01/2024 | 25 | RESPONSE to 22 Order on Motion for Leave to File Amicus Brief, , filed by USA. (Yale, Nathanael) (Entered: 05/01/2024) |
| 05/06/2024 | 26 | REPLY to Response to Motion re 11 MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6) , filed by USA. (Yale, Nathanael) (Entered: 05/06/2024) |
| 07/29/2024 | 27 | ORDER re 11 MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6) filed by USA. **Supplemental briefs due by 9/9/2024.** Signed by Senior Judge Edward J. Damich. (lp1) Service on parties made. (Entered: 07/29/2024) |
| 08/05/2024 | 28 | ORDER denying 19 Motion for Pro Hac Vice Admission. Signed by Senior Judge Edward J. Damich. (lp1) Service on parties made. (Entered: 08/05/2024) |

**APPX17**

| | | |
|---|---|---|
| 09/09/2024 | [29](#) | RESPONSE to [27](#) *Supplemental Briefing Order*, filed by USA. (Yale, Nathanael) Modified on 9/10/2024 docket text.(py). (Entered: 09/09/2024) |
| 09/09/2024 | [30](#) | RESPONSE to [27](#) Order *for Supplemental Briefing*, filed by LIGADO NETWORKS LLC. (Fischman, Harris) (Entered: 09/09/2024) |
| 11/18/2024 | [31](#) | ORDER granting in part and denying in part [11](#) Motion to Dismiss - Rule 12(b)(1) and (6). The Court ORDERS the Government to file its Answer to Plaintiff's Complaint by 1/2/2025. Signed by Senior Judge Edward J. Damich. (hem) Service on parties made. (Entered: 11/18/2024) |
| 12/26/2024 | [32](#) | MOTION for Extension of Time until 2/3/2025 to File Answer re [31](#) Order on Motion to Dismiss - Rule 12(b)(1) and (6), , filed by USA.**Response due by 1/9/2025.**(Yale, Nathanael) (Entered: 12/26/2024) |
| 12/27/2024 | [33](#) | RESPONSE to [32](#) MOTION for Extension of Time until 2/3/2025 to File Answer re [31](#) Order on Motion to Dismiss - Rule 12(b)(1) and (6), , filed by LIGADO NETWORKS LLC.**Reply due by 1/3/2025.** (Fischman, Harris) (Entered: 12/27/2024) |
| 12/30/2024 | [34](#) | ORDER granting [32](#) Motion for Extension of Time to File Answer. **Answer due by 2/3/2025.** Signed by Senior Judge Edward J. Damich. (lp1) Service on parties made. (Entered: 12/30/2024) |
| 12/30/2024 | [35](#) | NOTICE, filed by LIGADO NETWORKS LLC re [34](#) Order on Motion for Extension of Time to File Answer */ Letter re Clarfication of the Court's 12/30/24 Order*. (Fischman, Harris) (Entered: 12/30/2024) |
| 12/30/2024 | [36](#) | AMENDED ORDER re [34](#) Order on Motion for Extension of Time to File Answer. Answer due 2/3/2025. Signed by Senior Judge Edward J. Damich. (lp1) Service on parties made. (Entered: 12/30/2024) |
| 01/16/2025 | [37](#) | MOTION to Certify Interlocutory Appeal , filed by USA.**Response due by 1/30/2025.** (Yale, Nathanael) (Entered: 01/16/2025) |
| 01/30/2025 | [38](#) | RESPONSE to [37](#) MOTION to Certify Interlocutory Appeal , filed by LIGADO NETWORKS LLC.**Reply due by 2/6/2025.** (Fischman, Harris) (Entered: 01/30/2025) |
| 02/03/2025 | [39](#) | ANSWER to [1](#) Complaint, , filed by USA.**JPSR due by 3/24/2025.**(Yale, Nathanael) (Entered: 02/03/2025) |
| 02/03/2025 | [40](#) | MOTION for Extension of Time until 2/12/25 to File Reply as to [37](#) MOTION to Certify Interlocutory Appeal , [38](#) Response to Motion , filed by USA.**Response due by 2/18/2025.** (Yale, Nathanael) (Entered: 02/03/2025) |
| 02/04/2025 | [41](#) | ORDER granting [40](#) Motion for Extension of Time to File Reply. **Reply due by 2/12/2025.** Signed by Senior Judge Edward J. Damich. (lp1) Service on parties made. (Entered: 02/04/2025) |
| 02/12/2025 | [42](#) | REPLY to Response to Motion re [37](#) MOTION to Certify Interlocutory Appeal , filed by USA. (Yale, Nathanael) (Entered: 02/12/2025) |
| 02/28/2025 | [43](#) | ORDER granting [37](#) Motion to Certify Interlocutory Appeal. The case is stayed pending the appeal. Signed by Senior Judge Edward J. Damich. (lp1) Service on parties made. (Entered: 02/28/2025) |

**PACER Service Center**

**Transaction Receipt**

APPX18

| 03/09/2025 20:40:00 | | | |
|---|---|---|---|
| **PACER Login:** | nyale1323 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-01797-EJD |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

**APPX19**